1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MALCOLM SHEPARD,

          Petitioner,

   v.

CONNIE GIPSON,

          Respondent.

No. 2:13-cv-1812 JAM DB P

<u>FINDINGS AND RECOMMENDATIONS</u>

     Petitioner is a state prisoner proceeding without counsel with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 302.  Petitioner challenges a judgment of conviction entered against him on June 19, 2007, in the Sacramento County Superior Court on a charge of first degree felony murder with use of a firearm.  He seeks federal habeas relief on the grounds that his trial counsel rendered ineffective assistance and the evidence was insufficient to support the charges against him.  Upon careful consideration of the record and the applicable law, the undersigned recommends that petitioner's habeas petition be denied.

**I. Timeliness of Petition**

     Before he filed his habeas petition in this court, petitioner filed a motion for stay and abeyance pending the investigation and outcome of DNA testing authorized by California law. ECF No. 4.  Respondent opposed petitioner's request for stay and abeyance, arguing, among

1   other things, that a stay was not appropriate because the habeas petition was untimely and should

2   therefore be dismissed with prejudice.  ECF No. 14 at 31.  In his reply, petitioner conceded that

3   his federal habeas petition was untimely but requested equitable tolling of the relevant statute of

4   limitations based on his mental impairment, actual innocence, and lack of understanding of the

5   law.  ECF No. 16 at 5.  Petitioner also requested that, if a stay was not granted, the court hold an

6   evidentiary hearing on his request for equitable tolling.  Id. at 7.

7        The assigned Magistrate Judge issued findings and recommendations recommending that

8   petitioner's motion for a stay be denied.  ECF No. 17.  The Magistrate Judge concluded that

9   petitioner's habeas petition was untimely filed, but deferred ruling on petitioner's request for

10  equitable tolling pending further development of the record.  Id. at 8.  Respondent was directed to

11  file either an answer to the petition or a motion to dismiss based on timeliness grounds.  Id.

12  Respondent subsequently filed an answer to the habeas petition in which he raises an affirmative

13  defense that the federal petition is time barred.  ECF No. 25 at 9.

14       Because AEDPA's statute of limitations is not jurisdictional, see Green v. White, 223 F.3d

15  1001, 1003-04 (9th Cir. 2000), and because the issues involved in the statute of limitations

16  arguments of the parties are complex in this case and it is apparent that petitioner's claims must

17  be denied, the court elects to deny petitioner's habeas petition on the merits rather than reach the

18  equitable tolling issues.  Day v. McDonough, 547 U.S. 198, 199 (2006) ("[T]he court holds that a

19  district court has discretion to decide whether the administration of justice is better served by

20  dismissing the case on statute of limitations grounds or by reaching the merits of the petition");

21  Bruno v. Director, CDCR, No. CIV S-02-2339 LKK EFB P, 2010 WL 367538, at *2 (E.D. Cal.

22  Jan. 26, 2010) ("[T]he court elects to deny petitioner's habeas petition on the merits rather than

23  reach the equitable tolling issue.").  Accordingly, below the court addresses the claims contained

24  in petitioner's habeas petition.

25  **II.  Procedural Default**

26       Petitioner raises four claims for relief in the instant habeas petition.  In his first two

27  grounds for relief, he claims that his trial counsel rendered ineffective assistance in failing to

28  investigate ballistics and fingerprint evidence and hire DNA experts to establish that petitioner

1   was not the shooter, and in failing to investigate and present evidence that the victim's criminal

2   lifestyle may have caused his death.  ECF No. 1 at 10, 17.  In his third and fourth grounds for

3   relief, petitioner claims that the evidence was insufficient to support the gun-use enhancement

4   and the "essential elements of the charged offenses."  Id. at 23, 27.

5        Petitioner raised all of these claims for relief in a petition for writ of habeas corpus filed in

6   the California Supreme Court.  Resp't's Lod. Doc. 10.  The Supreme Court denied petitioner's

7   claims with a citation to In re Robbins, 18 Cal.4th 770, 780 (1998), which means that the petition

8   was rejected as untimely.  Resp't's Lod. Doc. 11.  See Walker v. Martin, 562 U.S. 307 (2011).

9   Respondent argues that the California Supreme Court's denial of his habeas petition with a

10  citation to In re Robbins constitutes a state procedural bar which precludes this court from

11  addressing the merits of petitioner's four federal habeas claims.  ECF No. 25 at 16-17.  Petitioner

12  argues that any procedural bar should be excused because of his innocence, prison lockdowns and

13  transfers, his age, his mental disabilities, and other factors beyond his control that prevented him

14  from filing his state habeas petitions in a timely manner.  ECF No. 1 at 15-16.

15       As a general rule, "[a] federal habeas court will not review a claim rejected by a state

16  court 'if the decision of [the state] court rests on a state law ground that is independent of the

17  federal question and adequate to support the judgment."  Martin, 562 U.S. at 314 (quoting Beard

18  v. Kindler, 558 U.S. 53 (2009).  In Martin, the United States Supreme Court held that California's

19  untimeliness bar qualifies as an adequate and independent state ground to bar habeas relief in

20  federal court.[1]  Id.  Accordingly, it appears that the four claims contained in the federal habeas

21  petition before this court are procedurally barred by virtue of the decision of the California

22  Supreme Court and its citation to In re Robbins to deny petitioner's habeas claims.  Walker, 562

23  U.S. at 314.  Even if the claims were not barred, however, for the reasons set forth below they

24  lack merit and should be denied.

---

26  [1]  In Martin, the petitioner's habeas petition was denied by the California Supreme Court with
    citations to In re Clark, 5 Cal.4th 750, 765 n.5 (1993) and In re Robbins, 18 Cal.4th 770, 780
27  (1998).  The United States Supreme Court explained that the three "leading decisions" that
    describe California's timeliness requirement are In re Clark, In re Robbins, and In re Gallego, 18
28  Cal.4th 825 (1998).  562 U.S. at 312.

1  **III.  Factual Background**

2         In its unpublished memorandum and opinion affirming petitioner's judgment of

3  conviction on appeal, the California Court of Appeal for the Third Appellate District provided the

4  following factual summary:

5              A jury convicted defendant Malcolm Shepard, Jr. of the first degree
           murder of Vinh Nguyen (Pen.Code, §§ 187, subd. (a), 189) and
6          found that he committed the murder during an attempted robbery
           (Pen.Code, § 190.2, subd. (a)(17)(A)).   The jury also found
7          defendant was armed with a firearm (Pen.Code, § 12022,
           (a)(1)) and personally and intentionally discharged the firearm
8          causing Nguyen's death (Pen.Code, § 12022.53, subd. (d)).  He was
           sentenced to prison for life without the possibility of parole, plus a
9          consecutive term of 25 years to life for the discharge of a firearm
           enhancement, and the court imposed other orders including a
10         $10,000 parole revocation fine (Pen.Code, § 1202.45) and a $5,000
           court construction penalty (Gov.Code, § 70372).

11

12            On appeal, defendant contends, among other things, that the trial
           court  erred  in  allowing  introduction  of  evidence  regarding
13         incriminatory statements defendant made to a deputy sheriff and to
           a friend, and that the parole revocation fine and court construction
14         penalty must be stricken.  We shall modify the judgment by striking
           said fine and penalty, and shall affirm the judgment as modified.

15         **FACTS**

16            On the night of January 10, 2005, Vinh Nguyen was shot in the
           back of the head as he and defendant crossed a poorly lit pedestrian
17         footbridge connecting Jeanine Drive and Verner Avenue across
           Interstate 80.  Defendant later told Nathan Pelkey, a friend of both
18         defendant and Nguyen, that defendant shot and killed Nguyen.
           Defendant took Pelkey to the scene to show him where it happened,
19         and stated he "had to" kill Nguyen because he owed him money.
           Defendant said that he was wearing a hooded sweatshirt and gloves
20         when he pulled the trigger, and that Nguyen fell to the ground with
           his hands still in his pockets.  He admitted taking Nguyen's cell
21         phone and marijuana, and possibly his wallet, before going to the
           home of defendant's girlfriend, Jaclyn Gallegos, where he arrived
22         with the gun, a backpack containing the sweatshirt and gloves, and
           Nguyen's marijuana.[2]

23

24            Defendant's confession to Pelkey was corroborated by other
           evidence adduced during the trial.

25            T.F. heard a gunshot while he was in a house on Jeanine Drive.  He

26  ────────────────

27  [2]  Petitioner asserts that "it came out at trial that the victims wallet, cash and marijuana was never
   stolen from him – the wallet was recovered at the hospital and the cash – the victim had dropped
   off the cash prior to his death.  The marijuana was found on the victims person at the scene."
28  ECF No. 27 at 8.

immediately went outside to investigate. No one came from the footbridge onto Jeanine Drive. When T.F. reached the footbridge, he saw Nguyen lying in a pool of blood with his hands in his pockets, "almost as though he had been laid down." Believing that the shooter might still be close by, T.F. yelled out for someone to call 9-1-1.

Meanwhile, on the Verner Avenue side of the footbridge, F.B. was walking his dogs. Not far away from the footbridge, he saw a man run past him "at an extremely fast pace." The man appeared to be in his early twenties, had a "slim build," was approximately five feet, seven inches tall, and wore dark clothing and a "beanie."[3]

Deputy Sheriff Corey Newman arrived at the crime scene within five minutes of the 9-1-1 call. Nguyen was breathing but was "totally unresponsive" as he lay on his back in a "large pool of blood" and "what appeared to be brain matter." His feet were crossed at the ankles and "he still had both of his hands inside of his jacket pockets." A nine-millimeter shell casing was on the ground next to Nguyen's head. Although treated by paramedics at the scene and rushed to the hospital, Nguyen did not survive.

Evidence showed that Nguyen was in the business of selling marijuana. A search of his room following the shooting revealed two shotguns and three rifles, ammunition, Ziploc baggies containing marijuana, a scale, and a pay-owe sheet indicating that "Malcolm" owed Nguyen $120.

Defendant had told Pelkey that Nguyen "fronted" defendant some marijuana and that he owed Nguyen "more than a hundred" dollars. On several occasions during the month before Nguyen was killed, defendant said to Pelkey that he wanted to "jack" Nguyen's guns and marijuana, and he asked Pelkey to give him a ride to Nguyen's house so that he could do so. According to Pelkey, defendant regularly carried a semiautomatic nine-millimeter handgun, gloves, and a change of clothing in his backpack. Defendant showed the gun to Pelkey several times.

Defendant stayed at Pelkey's house the night before Nguyen was killed. When defendant left, he was carrying his backpack and said he was "going down the street to get a ride from [Nguyen]." Defendant then walked to a nearby Wienerschnitzel restaurant where Nguyen and his friend, Alex Raymundo, picked defendant up.

Raymundo testified that the man they picked up was a "skinny" "dark," 18 to 20 years old, with lighter skin tone, approximately five feet, five inches tall, wearing dark clothing and a black "wave cap or beanie," and carrying a backpack.[4] When Nguyen dropped

---

[3]   The probation report reflects that, at the time of the murder, defendant was 18 years old, was five feet, six inches tall, and weighed 120 pounds.

[4]   As noted in footnote 1, defendant, who is African American, was 18 years old, five feet, six

5

Raymundo off at his house late in the evening, defendant remained with Nguyen in the vehicle.

Evidence revealed that several calls were made from Nguyen's cell phone, including a 19-minute call to the telephone number of defendant's girlfriend, Jaclyn Gallegos, about an hour and a half prior to the shooting. Gallegos testified that defendant did not have a cell phone of his own and would often use other's cell phones to make calls, and that on the day of the shooting, defendant told her he was with his "Asian friend." Although Gallegos claimed not to remember the call, she acknowledged that she knew Nguyen and had purchased marijuana from him, and that she would not have ever talked to him for more than "a couple of minutes at the most." Other calls were also made from Nguyen's cell phone to the number of Frank Green, Jr., defendant's cousin, to the number of Cornelius Johnson, a close friend of defendant's father, and to the number of Sergio Harris, whom defendant later admitted calling from Nguyen's cell phone.

The night of the shooting, defendant also used Nguyen's phone to call Pelkey and asked him if he wanted to buy any marijuana from Nguyen. When Pelkey declined, defendant whispered into the phone: "Just tell him. Just act like you want to." Feeling that defendant was setting Nguyen up to be robbed, Pelkey refused to participate. Defendant used Nguyen's cell phone to call Pelkey back several times, and said defendant and Nguyen were walking toward Foothill Junior High, a short walk across the pedestrian footbridge from Nguyen's house. Pelkey could hear Nguyen in the background during those phone calls. Less than 30 minutes before Nguyen was shot, defendant and Pelkey talked for roughly five minutes. Less than five minutes before Nguyen was shot, another call was placed from Nguyen's cell phone to Pelkey's cell phone; this call, lasting roughly a minute, was the last call made from Nguyen's cell phone prior to the shooting.

Pelkey was at the home of his girlfriend, Deseree Klisch, when he received the phone calls from defendant. During one of the calls, Klisch witnessed Pelkey become "really upset" and overheard him pleading into the phone: "No. No. Don't do that to my homey." Pelkey also pleaded: "That's my friend. Don't do that." When he got off the phone, a "broken down" Pelkey told Klisch that his friend was "about to get jacked."

As already indicated, Nguyen was shot in the back of the head within minutes of those phone calls. When police arrived at the scene, his cell phone was missing and his wallet, which contained roughly two hundred dollars earlier in the day, contained a single one-dollar bill.

Several calls were made with Nguyen's cell phone immediately following the shooting. The first of those calls, made 13 minutes after the 9-1-1 call, was to Gallegos. Several calls were then made to Cornelius Johnson and Frank Green, Jr. Analysis of the cell

inches tall, and weighed 120 pounds.

phone records revealed that all of the outgoing calls made from Nguyen's cell phone prior to the shooting were made from the area surrounding the pedestrian footbridge. After the shooting, several of the outgoing calls made from Nguyen's cell phone bounced off of the cell tower nearest to Gallegos's house, indicating the person using the phone had moved from the general vicinity of the footbridge to the general vicinity of defendant's girlfriend's house.

Defendant made contradictory statements to investigators concerning his whereabouts on the night of the murder, as well as his suspicions about who did the killing. Eventually, defendant admitted being with Nguyen on the pedestrian footbridge when he was shot, but claimed that Sergio Harris pulled the trigger. Defendant also admitted calling Harris the night of the shooting and telling him where defendant and Nguyen would be, but denied that he did so in order to set Nguyen up. According to defendant, he initially lied to detectives about what had happened to Nguyen because Harris had threatened him.

People v. Shepard, No. C057177, 2009 WL 2883495, at *1–3 (Cal. Ct. App. Sept. 10, 2009).

## IV. Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a). A federal writ is not available for alleged error in the interpretation or application of state law. See Wilson v. Corcoran, 562 U.S. 1, 5 (2010); Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000).

Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas corpus relief:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

 (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

For purposes of applying § 2254(d)(1), "clearly established federal law" consists of holdings of the United States Supreme Court at the time of the last reasoned state court decision.

1  Greene v. Fisher, ___ U.S. ___, ___, 132 S. Ct. 38, 44 (2011); Stanley v. Cullen, 633 F.3d 852,

2  859 (9th Cir. 2011) (citing Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Circuit court

3  precedent "may be persuasive in determining what law is clearly established and whether a state

4  court applied that law unreasonably."  Stanley, 633 F.3d at 859 (quoting Maxwell v. Roe, 606

5  F.3d 561, 567 (9th Cir. 2010)).  However, circuit precedent may not be "used to refine or sharpen

6  a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] [Supreme]

7  Court has not announced."  Marshall v. Rodgers, ___ U.S. ___, ___, 133 S. Ct. 1446, 1450 (2013)

8  (citing Parker v. Matthews, ___ U.S. ___, ___, 132 S. Ct. 2148, 2155 (2012)).  Nor may it be

9  used to "determine whether a particular rule of law is so widely accepted among the Federal

10  Circuits that it would, if presented to th[e] [Supreme] Court, be accepted as correct.  Id.  Further,

11  where courts of appeals have diverged in their treatment of an issue, it cannot be said that there is

12  "clearly established Federal law" governing that issue.  Carey v. Musladin, 549 U.S. 70, 77

13  (2006).

14         A state court decision is "contrary to" clearly established federal law if it applies a rule

15  contradicting a holding of the Supreme Court or reaches a result different from Supreme Court

16  precedent on "materially indistinguishable" facts.  Price v. Vincent, 538 U.S. 634, 640 (2003).

17  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may grant the

18  writ if the state court identifies the correct governing legal principle from the Supreme Court's

19  decisions, but unreasonably applies that principle to the facts of the prisoner's case.  Lockyer v.

20  Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360 F.3d 997, 1002

21  (9th Cir. 2004).  A federal habeas court "may not issue the writ simply because that court

22  concludes in its independent judgment that the relevant state-court decision applied clearly

23  established federal law erroneously or incorrectly.  Rather, that application must also be

24  unreasonable."  Williams, 529 U.S. at 412.  See also Schriro v. Landrigan, 550 U.S. 465, 473

25  (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal habeas court, in its independent

26  review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'")

27  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

28  'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington v.

1    Richter, 562 U.S. 86, 101 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

2    Accordingly, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner

3    must show that the state court's ruling on the claim being presented in federal court was so

4    lacking in justification that there was an error well understood and comprehended in existing law

5    beyond any possibility for fairminded disagreement." Richter, 562 U.S. at 103.

6         If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing

7    court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford,

8    527 F.3d 919, 925 (9th Cir. 2008); see also Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008)

9    (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of §

10   2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering

11   de novo the constitutional issues raised.").

12        The court looks to the last reasoned state court decision as the basis for the state court

13   judgment. Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004).

14   If the last reasoned state court decision adopts or substantially incorporates the reasoning from a

15   previous state court decision, this court may consider both decisions to ascertain the reasoning of

16   the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). "When a

17   federal claim has been presented to a state court and the state court has denied relief, it may be

18   presumed that the state court adjudicated the claim on the merits in the absence of any indication

19   or state-law procedural principles to the contrary." Richter, 562 U.S. at 99. This presumption

20   may be overcome by a showing "there is reason to think some other explanation for the state

21   court's decision is more likely." Id. at 99-100 (citing Ylst v. Nunnemaker, 501 U.S. 797, 803

22   (1991)). Similarly, when a state court decision on a petitioner's claims rejects some claims but

23   does not expressly address a federal claim, a federal habeas court must presume, subject to

24   rebuttal, that the federal claim was adjudicated on the merits. Johnson v. Williams, ___ U.S. ___,

25   ___, 133 S. Ct. 1088, 1091 (2013).

26        Where the state court reaches a decision on the merits but provides no reasoning to

27   support its conclusion, a federal habeas court independently reviews the record to determine

28   whether habeas corpus relief is available under § 2254(d). Stanley, 633 F.3d at 860; Himes v.

Thompson, 336 F.3d 848, 853 (9th Cir. 2003).  "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable."  Himes, 336 F.3d at 853.  Where no reasoned decision is available, the habeas petitioner still has the burden of "showing there was no reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.

A summary denial is presumed to be a denial on the merits of the petitioner's claims. Stancle v. Clay, 692 F.3d 948, 957 & n. 3 (9th Cir. 2012).  While the federal court cannot analyze just what the state court did when it issued a summary denial, the federal court must review the state court record to determine whether there was any "reasonable basis for the state court to deny relief."  Richter, 562 U.S. at 98.  This court "must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court."  562 U.S. at 102.  The petitioner bears "the burden to demonstrate that 'there was no reasonable basis for the state court to deny relief.'"  Walker v. Martel, 709 F.3d 925, 939 (9th Cir. 2013) (quoting Richter, 562 U.S. at 98).

**V.  Petitioner's Claims**[5]

**A.  Ineffective Assistance of Counsel**

Petitioner raises two claims alleging that his trial counsel rendered ineffective assistance. After setting forth the applicable legal principles, the court will analyze these claims in turn below.

**1.  Applicable Legal Principles**

The clearly established federal law governing ineffective assistance of counsel claims is that set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  To succeed on a Strickland claim, a defendant must show that (1) his counsel's performance was

---

[5]  Because the California Supreme Court denied petitioner's claims on procedural grounds and not on the merits, this court will analyze petitioner's federal habeas claims using de novo review. Stanley, 633 F.3d at 860 (When it is clear that a state court has not reached the merits of a petitioner's claim, the deferential standard set forth in 28 U.S.C. § 2254(d) does not apply and a federal habeas court must review the claim de novo).  See also Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006) (same); Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003) (same).

1  deficient and that (2) the "deficient performance prejudiced the defense." Id. at 687.  Counsel is

2  constitutionally deficient if his or her representation "fell below an objective standard of

3  reasonableness" such that it was outside "the range of competence demanded of attorneys in

4  criminal cases." Id. at 687–88 (internal quotation marks omitted).  "Counsel's errors must be 'so

5  serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" Richter, 562 at

6  104 (quoting Strickland, 466 U.S. at 687).  A reviewing court is required to make every effort "to

7  eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's

8  challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

9  Strickland, 466 U.S. at 669.  See also Richter, 562 U.S. at 107 (same).

10       Reviewing courts must "indulge a strong presumption that counsel's conduct falls within

11  the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  There is in

12  addition a strong presumption that counsel "exercised acceptable professional judgment in all

13  significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing

14  Strickland, 466 U.S. at 689).  This presumption of reasonableness means that the court must "give

15  the attorneys the benefit of the doubt," and must also "affirmatively entertain the range of

16  possible reasons [defense] counsel may have had for proceeding as they did." Cullen v.

17  Pinholster, 563 U.S. 170, 196 (2011) (internal quotation marks and alterations omitted).

18       Prejudice is found where "there is a reasonable probability that, but for counsel's

19  unprofessional errors, the result of the proceeding would have been different." Strickland, 466

20  U.S. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the

21  outcome." Id.  "The likelihood of a different result must be substantial, not just conceivable."

22  Richter, 562 U.S. at 112.  A reviewing court "need not determine whether counsel's performance

23  was deficient before examining the prejudice suffered by the defendant as a result of the alleged

24  deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of

25  sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955

26  (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697), amended and superseded on other grounds

27  by Pizzuto v. Arave, 385 F.3d 1247 (9th Cir. 2004).

28  /////

1

## 2. Failure to Investigate and Hire Experts

2      In his first ground for relief, petitioner claims that his trial counsel rendered ineffective

3  assistance in failing to investigate "ballistics/fingerprints/or hire experts for DNA testing" on the

4  gun shell case that belonged to Sergio Harris.  ECF No. 1 at 4.[6]  Petitioner states that Harris, and

5  not he, shot Nguyen.  Id.  He points to evidence in the record that arguably supports his

6  contention that Harris was the shooter.  Id. at 11-12.  He alleges that if his counsel had conducted

7  further investigation, "a reasonable probability exists to undermine verdict."  Id. at 4.

8      In his supporting memorandum of points and authorities, petitioner states that that he was

9  with the victim when he was shot by Harris and that, after the shooting, petitioner "ran out of fear

10  from the incident."  Id. at 10-11.  Petitioner notes that Harris had a prior conviction involving

11  possession of a .9 millimeter gun, which was the same type of gun used to kill the victim.  Id. at

12  11.  Petitioner concedes that Harris' gun was compared to the gun used to kill the victim and was

13  excluded as the murder weapon.  Id. at 13; see also id. at 64.  However, he argues:

14
> But there was no GSR (gunshot residue) testing; fingerprints nor as
15  said 'the comparison' of (the ultimate question) between the
> gunshell '9mm Luger' stamped case with Harris' gunshells!  No
16  DNA testing was done.

17  Id. at 13.

18      Petitioner also argues that, based on the shell casing, his trial counsel "had an obligation to

19  investigate and hire experts to test the gunshell for Harris fingerprints and investigate whether the

20  gunshell had similar characteristics – or more to the point could be of the same brand as that

21  collected from Harris' 9 mm. gun after the crime?"  Id.  Petitioner argues trial counsel's failure to

22  conduct sufficient investigation into Harris' guilt was the equivalent of presenting "no defense at

23  all" and that, therefore, "prejudice should be presumed."  Id. at 12.  Petitioner also argues that an

24  evidentiary hearing and "post-conviction discovery" is necessary "for the appropriate analysis and

25  determination."  Id. at 14.

26
_____

27  [6]   Page number citations such as this one are to the page numbers reflected on the court's
CM/ECF system and not to page numbers assigned by the parties.

28

1       Defense counsel has a "duty to make reasonable investigations or to make a reasonable

2   decision that makes particular investigations unnecessary." Strickland, 466 U.S. at 691.  "This

3   includes a duty to . . . investigate and introduce into evidence records that demonstrate factual

4   innocence, or that raise sufficient doubt on that question to undermine confidence in the verdict."

5   Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001), amended by 253 F.3d 1150 (9th Cir. 2001)

6   (citing Hart v. Gomez, 174 F.3d 1067, 1070 (9th Cir. 1999).  On the other hand, where an

7   attorney has consciously decided not to conduct further investigation because of reasonable

8   tactical evaluations, his or her performance is not constitutionally deficient.  See Babbitt v.

9   Calderon, 151 F.3d 1170, 1173 (9th Cir. 1998).  "A decision not to investigate thus 'must be

10  directly assessed for reasonableness in all the circumstances.'"  Wiggins v. Smith, 539 U.S. 510,

11  533 (2003) (quoting Strickland, 466 U.S. at 691).  As noted above, in order to show prejudice,

12  petitioner must show a "reasonable probability that, but for counsel's unprofessional errors, the

13  result of the proceeding would have been different." Strickland, 466 U.S. at 694.  "The likelihood

14  of a different result must be substantial, not just conceivable." Richter, 562 U.S. 112.

15      Assuming arguendo that trial counsel was deficient in failing to investigate and compare

16  the murder weapon and shells found at the scene with Sergio Harris' gun and shells, or to conduct

17  DNA testing on the murder weapon and shells, petitioner has failed to demonstrate prejudice with

18  respect to this claim.  There is no evidence before this court that further investigation, including

19  investigation into "Ballistics/fingerprints" or DNA testing on Harris' firearm or the gun shells

20  would have resulted in evidence or information that would have changed the outcome of

21  petitioner's trial.  Petitioner's speculative assertions that such investigation would have shown

22  that Harris, and not he, shot Nguyen, are insufficient to establish prejudice.  Similarly, speculation

23  that further investigation by counsel may have uncovered exculpatory evidence is insufficient to

24  establish prejudice.  See Wildman v. Johnson, 261 F.3d 832, 839 (9th Cir. 2001) (speculation is

25  insufficient to establish prejudice); Villafuerte v. Stewart, 111 F.3d 616, 632 (9th Cir. 1997)

26  (petitioner's ineffective assistance claim denied where he presented no evidence concerning what

27  counsel would have found had he investigated further, or what lengthier preparation would have

28  accomplished); Hendricks v. Calderon, 70 F.3d 1032, 1042 (9th Cir. 1995) ("Absent an account

13

1  of what beneficial evidence investigation into any of these issues would have turned up,

2  Hendricks cannot meet the prejudice prong of the Strickland test).

3        Petitioner has also failed to demonstrate prejudice with respect to his claim that his trial

4  counsel should have retained "experts" to test the shell casing or the gun shell.  Without evidence

5  as to what expert witnesses would have testified to at trial, a habeas petitioner cannot establish

6  prejudice with respect to a claim of ineffective assistance of counsel for failing to call trial

7  witnesses.  See Bragg, 242 F.3d at 1088 (petitioner failed to establish prejudice where he did

8  "nothing more than speculate that, if interviewed," the witness would have given helpful

9  information); Dows v. Wood, 211 F.3d 480, 486-87 (2000) (no ineffective assistance of counsel

10  for failure to call an alleged alibi witnesses where petitioner did not identify an actual witness, did

11  not provide evidence that the witness would have testified, nor presented an affidavit from the

12  alleged witness he claimed should have been called); United States v. Harden, 846 F.2d 1229,

13  1231-32 (9th Cir. 1988) (no ineffective assistance because of counsel's failure to call a witness

14  where, among other things, there was no evidence in the record that the witness would testify);

15  United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1987) (appellant failed to satisfy the

16  prejudice prong of an ineffectiveness claim because he offered no indication of what potential

17  witnesses would have testified to or how their testimony might have changed the outcome of the

18  hearing).  Petitioner has failed to demonstrate that the testimony of any expert witnesses would

19  have changed the outcome of his trial.

20        Nor is petitioner entitled to relief with respect to his challenge to the defense case in

21  general.  Petitioner's counsel did not call any witnesses at trial but chose to challenge the

22  credibility of the prosecution witnesses and to argue in closing that the prosecution had not met

23  its burden of proving petitioner guilty beyond a reasonable doubt.  See Reporter's Transcript on

24  Appeal (RT) at 1196 ("I'm going to stick to the defense of Mr. Shepard by attacking the case of

25  the People.").  This strategy was a tactical decision made by petitioner's trial counsel.

26  Reasonable tactical decisions, including decisions with regard to the presentation of the case, are

27  "virtually unchallengeable."  Strickland, 466 U.S. at 687-90.  Under the circumstances of this

28  /////

1    case, and in light of the evidence against petitioner, counsel's decision in this regard was not

2    unreasonable.

3          Petitioner refers to "third party culpability" and "actual innocence" in his description of

4    this claim of ineffective assistance of counsel.  Although petitioner has not raised these issues as

5    separate claims, he would not prevail on any such claims even if they had been properly raised.

6    Evidence of potential third-party culpability must be admitted when, under the "facts and

7    circumstances" of the individual case, its exclusion would deprive the defendant of a fair trial.

8    Chambers v. Mississippi, 410 U.S. 284, 303 (1973); Lunbery v. Hornbeak, 605 F.3d 754, 760-61

9    (9th Cir. 2010).  However, where the proffered evidence of third party culpability simply affords

10   a possible ground of suspicion pointing to a third party and does not directly connect that person

11   with the actual commission of the crime, that evidence may be properly excluded.  People of

12   Territory of Guam v. Ignacio, 10 F.3d 608, 615 (9th Cir. 1993) (citing Perry v. Rushen, 713 F.2d

13   1447, 1449 (9th Cir. 1983)).  Here, petitioner states that he saw Sergio Harris shoot Nguyen.

14   However, petitioner chose not to testify at his trial, RT at 1110, and he has not offered any

15   evidence that directly establishes that Harris was the shooter.  He simply asserts that further

16   investigation might find evidence that Harris shot Nguyen.  This is insufficient to support a claim

17   of third-party culpability.

18         With regard to petitioner's claim of innocence, even assuming arguendo that a

19   freestanding claim of actual innocence is cognizable on federal habeas review, petitioner has

20   failed to make the requisite showing.  In order to prevail on such a claim, a petitioner "must go

21   beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably

22   innocent." Carriger v. Stewart, 132 F.3d 463, 476–77 (9th Cir.1997) (en banc).  See also Cooper

23   v. Brown, 510 F.3d 870, 923 (9th Cir. 2007) ("Under these standards, a petitioner must

24   affirmatively prove that he is probably innocent."); Boyde v. Brown, 404 F.3d 1159, 1168 (9th

25   Cir. 2005) (same).  Petitioner's speculation that further investigation might uncover evidence of

26   his innocence fails to meet this standard.  Under the record as it stands, petitioner has failed to

27   affirmatively prove that he is probably innocent.

28   /////

1      For all of the foregoing reasons, petitioner is not entitled to relief on this claim of

2   ineffective assistance of counsel.

3               **3. Failure to Argue Evidence Regarding the Victim's Lifestyle**

4      In his next ground for relief, petitioner claims that his trial counsel rendered ineffective

5   assistance in failing to argue to the jury during closing argument that "the victims criminal

6   lifestyle may have caused his death."  ECF No. 1 at 17.  Petitioner states that Nguyen led a

7   "targeted" lifestyle, which included "dealing drugs and possessing deadly weapons."  He argues

8   that Nguyen could have been killed by a "competing drug dealer," a rival gang member, or he

9   was "purely set up by a victim – of Nguyen's – 'previously committed crimes.'"  Id. at 18.

10  Petitioner also argues that his trial counsel should have explained to the jury in closing argument

11  that Pelkey lured Nguyen and petitioner to the overpass with an agreement to buy marijuana,

12  where Harris was "lying in wait" to rob them.  Id.   Petitioner contends there is no "logical reason

13  why counsel would not alert the court or jury to the compellingly obvious – that Pelkey and

14  Harris had motive to follow through with what either ended up in a 'botched' robbery – or even

15  worse."  Id.  In sum, petitioner is arguing that his trial counsel should have stressed to the jury in

16  closing argument that Nguyen's lifestyle created a number of possible murder suspects, including

17  but not limited to Pelkey and Harris.  Petitioner argues this evidence would have supported

18  counsel's argument that Harris, and not petitioner, shot Nguyen.  Id. at 19.

19     The right to effective assistance extends to closing arguments.  Yarborough v. Gentry, 540

20  U.S. 1, 5–6 (2003) (per curiam).  However, "counsel has wide latitude in deciding how best to

21  represent a client, and deference to counsel's tactical decisions in his closing presentation is

22  particularly important because of the broad range of legitimate defense strategy at that stage."  Id.

23  A decision by defense counsel to highlight certain aspects of the defense while choosing not to

24  focus on others does not establish that counsel was ineffective under Strickland.  Id.  "When

25  counsel focuses on some issues to the exclusion of others, there is a strong presumption that he

26  did so for tactical reasons rather than through sheer neglect."  Id. at *8.  Judicial review of a

27  defense attorney's summation is "highly deferential-and doubly deferential when it is conducted

28  /////

16

1    through the lens of federal habeas."  Id. at *6.  Further, the Sixth Amendment only "guarantees

2    reasonable competence, not perfect advocacy judged with the benefit of hindsight."  Id.

3         As in the claim above, petitioner has failed to demonstrate prejudice.  As noted by the

4    California Court of Appeal, the evidence showed that Nguyen was in the business of selling

5    marijuana; thus, the jury was aware of Nguyen's "lifestyle."  Shepard, 2009 WL 2883495, at *2.

6    Although petitioner is apparently arguing that his trial counsel should have investigated and

7    presented additional evidence regarding Nguyen's lifestyle and business dealings, he fails to

8    explain exactly what that evidence consisted of and how it would have resulted in a different

9    outcome at trial.  Petitioner's vague allegation that Nguyen's marijuana sales could have put him

10   in contact with people who may have had a motive to kill him is also insufficient to establish

11   prejudice.

12        Further, petitioner's trial counsel argued in closing that petitioner had seen Harris shoot

13   Nguyen and that the prosecution witnesses who testified about petitioner's guilt lacked

14   credibility.  RT at 1196, et seq.  Counsel particularly focused on Pelkey's testimony, arguing that

15   he was not telling the truth, that he was "manipulative," that he "lied" and that his testimony was

16   unreliable.  Id.  Counsel suggested the following scenario for how Nguyen was killed:

17            But Sergio – let's say he's in this mix.  Let's put him in here for a
             second.  Sergio comes up and he's going to rob Vinh Nguyen.  And
18           he comes up behind him on this noisy, darkened overpass, and he
             comes up behind him and he shoots him to rob him, then lets him
19           fall down and runs away.

20   Id. at 1218.  Petitioner has failed to explain what additional argument trial counsel should have

21   made on this subject, or how additional argument would have resulted in a different outcome.

22        Petitioner also argues that his trial counsel should have argued "the obvious:" that Pelkey

23   and Harris conspired together to rob Nguyen and that the robbery resulted in his death.  However,

24   he does not point to any specific trial evidence that would have supported this argument.  As

25   explained above, counsel argued that petitioner saw Harris shoot Nguyen.  He used the rest of his

26   argument to demonstrate why testimony to the contrary by the prosecution witnesses was self-

27   serving and false.  Petitioner has failed to overcome the presumption that his counsel's tactical

28   decisions to structure his argument in this way were not the result of sound trial strategy.

1    For the foregoing reasons, petitioner is not entitled to habeas relief on this claim that his

2    trial counsel rendered ineffective assistance during closing argument.

3        **B. Sufficiency of the Evidence**

4    Petitioner raises two claims alleging that the evidence introduced at his trial was

5    insufficient to support the jury's verdict.  After setting forth the applicable legal principles, the

6    court will analyze these claims in turn below.

7        **1. Applicable Legal Standards**

8    The Due Process Clause "protects the accused against conviction except upon proof

9    beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

10   charged." In re Winship, 397 U.S. 358, 364 (1970).  There is sufficient evidence to support a

11   conviction if, "after viewing the evidence in the light most favorable to the prosecution, any

12   rational trier of fact could have found the essential elements of the crime beyond a reasonable

13   doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979).  See also Chein v. Shumsky, 373 F.3d

14   978, 982 (9th Cir. 2004) ("[T]he dispositive question under Jackson is 'whether the record

15   evidence could reasonably support a finding of guilt beyond a reasonable doubt'").  Put another

16   way, "a reviewing court may set aside the jury's verdict on the ground of insufficient evidence

17   only if no rational trier of fact could have agreed with the jury." Cavazos v. Smith, ___ U.S. ___,

18   132 S.Ct. 2, *4 (2011).

19   "Jackson leaves juries broad discretion in deciding what inferences to draw from the

20   evidence presented at trial," and it requires only that they draw "'reasonable inferences from basic

21   facts to ultimate facts.'" Coleman v. Johnson,___ U.S. ___, 132 S.Ct. 2060, 2064 (2012) ( per

22   curiam ) (citation omitted).  "'Circumstantial evidence and inferences drawn from it may be

23   sufficient to sustain a conviction.'" Walters v. Maass, 45 F.3d 1355, 1358 (9th Cir.1995) (citation

24   omitted).  "A petitioner for a federal writ of habeas corpus faces a heavy burden when

25   challenging the sufficiency of the evidence used to obtain a state conviction on federal due

26   process grounds." Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005).  The federal habeas

27   court determines sufficiency of the evidence in reference to the substantive elements of the

28   criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Chein, 373 F.3d at 983.

### 2. Gun Enhancement

The information in this case charged petitioner with first degree murder and alleged that he "used, and intentionally and personally discharged a firearm, to wit, a 9mm handgun, and thereby proximately caused great bodily injury to [the victim]." Shepard, 2009 WL 2883495, at *12. The prosecution presented two theories for finding petitioner guilty of first degree murder: (1) that petitioner was the shooter; or (2) that Sergio Harris was the shooter and petitioner was liable for the murder as a co-participant or aider and abettor. The prosecutor explained these two theories to the jury during his closing argument, as follows:

> So let me talk to you about the two different theories of first-degree felony murder. And, again, remember back to the whole concept: You do not have to agree on which theory. Some of you – and I'm going to talk to you about why this man is the shooter, not Sergio Harris. But some of you, you know, maybe in deliberations will talk about, well, maybe Sergio is the shooter. Well, some of you may say, well, I think Malcolm did it. Some of you say, well, maybe – I think Sergio did it. The reality is that ultimately if you find those elements, it doesn't matter who pulled that trigger. If you find the elements, Malcolm Shepard is guilty.

> If we're going on the theory, which I'm going to talk to you about, in terms of the fact that Malcolm Shepard is the one that shot Vinh Nguyen, here's what I need to prove: That the Defendant committed or attempted to commit robbery. He intended to commit robbery, not just attempted or actually did, that he meant to do it. He wanted to commit a robbery. Okay. While committing or attempting to do the robbery, the Defendant did an act that caused the death of Vinh Nguyen. Okay.

> And then we move on to this other theory the Judge talked to you about, if you believe that Sergio Harris committed this fatal act. You have to believe that in assessing the evidence the Defendant either committed or attempted to commit the robbery, or that he aided and abetted the robbery or the attempted robbery. Okay.

> Number two, that he not only either committed it or aided and abetted in the commission of it, that he intended to commit the robbery or he intended to aid or abet Sergio Harris in the commission of the robbery. Okay.

> Let's talk about a couple other elements on co-participant. If you believe the Defendant did not personally commit or attempt to commit the robbery, than a perpetrator personally committed or attempted to commit the robbery. Okay. While committing or attempting to commit the robbery, the co-participant, Sergio Harris, did an act that caused Vinh Nguyen's death.

1   RT at 1163-64.  The prosecutor urged the jury to find petitioner guilty under the first theory: that

2   petitioner was the shooter.  Id. at 1165 ("this man alone was the shooter in this case").  In

3   addition, the verdict form required the jury to make a determination whether petitioner used and

4   personally discharged a firearm if they found that he was guilty of first degree murder.  Clerk's

5   Transcript on Appeal (CT) at 435.  As set forth above, the jury found petitioner guilty of first

6   degree murder, found that he committed the murder during the commission of attempted robbery,

7   and also found petitioner was armed with a firearm and that he personally and intentionally

8   discharged the firearm, causing Nguyen's death.  Id.

9       In his third ground for relief, petitioner claims that the evidence introduced at his trial is

10  insufficient to support the firearm enhancement.  He argues it cannot be determined whether the

11  jury found him guilty as the shooter or as an aider and abettor.  ECF No. 1 at 23-24.  Regardless,

12  petitioner argues that the evidence did not support the gun enhancement under either theory.  Id.

13  at 24.  With regard to the first theory, petitioner argues that the evidence did not support a finding

14  that he shot Nguyen; therefore he could not be guilty of discharging the murder weapon.  He

15  repeats his argument that the evidence showed Harris was the shooter.  With regard to the aiding

16  and abetting theory, petitioner argues that if the jury found Harris shot Nguyen, under California

17  law petitioner should not have received a sentence enhancement for discharge of the firearm.  Id.

18  at 24-25.  He argues that "personal use only applies to the actual perpetrator."  Id. at 25.

19      Viewing the evidence admitted at petitioner's trial as a whole and in the light most

20  favorable to the prosecution, a rational juror could have found beyond a reasonable doubt that

21  petitioner shot Nguyen with a firearm.  This is true even though the evidence could also have

22  supported a jury finding that Sergio Harris was the shooter.  The jury decided what inferences to

23  draw from the evidence presented at trial and concluded that petitioner shot and killed Nguyen.  It

24  was entirely within the jury's prerogative to do this.  See Schlup v. Delo, 513 U.S. 298, 330

25  (1995) ("[U]nder Jackson, the assessment of the credibility of witnesses is generally beyond the

26  scope of review.")  Harper v. City of Los Angeles, 533 F.3d 1010, 1023-24 (9th Cir. 2008) ("[I]t

27  was entirely within the jury's prerogative to find more credible the Officers' version of the facts

28  surrounding the arrest and the jury was entitled to disregard the City's account of the incident");

1    Bruce v. Terhune, 376 F.3d 950, 957 (9th Cir. 2004) ("[A] jury's credibility determinations are

2    therefore entitled to near-total deference under Jackson"); United States v. Brady, 579 F.2d 1121,

3    1127 (9th Cir. 1978) (explaining that, in applying Jackson test for sufficiency of the evidence, "it

4    is the exclusive function of the jury to determine the credibility of the witnesses, resolve

5    evidentiary conflicts and draw reasonable inferences from proven facts"); United States v.

6    Ramos, 558 F.2d 545, 546 (9th Cir. 1977) ("[T]he reviewing court must respect the exclusive

7    province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and

8    draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters

9    in a manner which supports the verdict.").

10         Further, the jury's specific finding that petitioner used and personally discharged the

11    firearm controverts petitioner's argument that the jury found him guilty as an aider and abettor.

12    On the contrary, the verdict form reflects that the jury found petitioner guilty because they

13    concluded he shot Nguyen during the commission of a robbery.

14         For the foregoing reasons, petitioner has failed to establish that the firearm enhancement

15    is not supported by sufficient evidence.  Accordingly, he is not entitled to federal habeas relief on

16    this claim.[7]

17                  **3.  Elements of the Charged Offenses**

18         In his final ground for relief, petitioner claims that the evidence introduced at his trial was

19    insufficient to "prove beyond a reasonable doubt the essential elements of the charged offenses."

20

21    [7]  Petitioner includes an "alternative subclaim" that his trial counsel rendered ineffective
assistance in "failing to object on the above facts and statutory grounds,"  ECF No. 1 at 25.

22    Petitioner also alleges his appellate counsel rendered ineffective assistance in failing to "raise
these grounds" on appeal.  Id.  Because there was no constitutional violation resulting from the

23    jury finding on the gun enhancement, petitioner cannot show prejudice with respect to these
claims.  The failure to make a meritless objection or raise a meritless appellate claim does not

24    constitute ineffective assistance.  See Jones v. Smith, 231 F.3d 1227, 1239 n.8 (9th Cir. 2000)
(citing Boag v. Raines, 769 F.2d 1341, 1344 (9th Cir. 1985) (an attorney's failure to make a

25    meritless objection or motion does not constitute ineffective assistance of counsel)); Matylinsky
v. Budge, 577 F.3d 1083, 1094 (9th Cir. 2009) (counsel's failure to object to testimony on

26    hearsay grounds not ineffective where objection would have been properly overruled); Rupe v.

27    Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) ("the failure to take a futile action can never be
deficient performance"); Miller v. Keeney, 882 F.2d 1428, 1434 (9th Cir. 1989) (appellate

28    counsel is not deficient for failing to raise a weak issue).

1   ECF No. 1 at 27.  He argues that the prosecution's case "relied entirely" on Pelkey's testimony,

2   which was unreliable and "proven false on key aspects."  Id.  Petitioner argues that "there is no

3   physical evidence to establish the facts of Pelkey's claim that Shepard confessed," and that the

4   jury "was left to impermissible speculation instead of solid evidence."  Id. at 28.  Petitioner

5   repeats that he saw Harris shoot Nguyen, after which he "ran away in fear."  Id.  He concludes

6   that no rational juror could have "found the essential elements of attempted 'or' robbery felony

7   murder special circumstances beyond a reasonable doubt."  Id.  Petitioner summarizes his claim

8   as follows:

9           The states case relies solely on "hypothetical theories with no solid
            evidentiary value.  This caused a miscarriage of justice convicting a
10          person actually innocent.

11  Id. at 29.

12          Viewing the evidence in the light most favorable to the verdict, there was sufficient

13  evidence introduced at petitioner's trial to support the jury's verdict on all counts on which

14  petitioner was convicted.  Although Pelkey's testimony was inconsistent with the defense theory

15  that petitioner did not shoot Nguyen, the jury apparently found Pelkey's version of the events

16  credible.  As explained above, this was the jury's prerogative.  Further, although the prosecution

17  relied on numerous witnesses to establish petitioner's guilt, Pelkey's testimony alone was

18  sufficient to support the verdict in this case.  See United States v. Gudino, 432 F.2d 433, 434 (9th

19  Cir. 1970) ("The testimony of the one witness, if believed, was sufficient to support the

20  conviction, and the resolution of any question as to his credibility was properly entrusted to the

21  jury").

22          Petitioner has failed to demonstrate that the jury verdict in this case was not supported by

23  sufficient evidence.  Accordingly, he is not entitled to relief on this claim.

24  **C. Evidentiary Hearing**

25          Petitioner requests an evidentiary hearing on the federal habeas claims before this court.

26          Pursuant to 28 U.S.C. § 2254(e)(2), an evidentiary hearing is appropriate under the

27  following circumstances:

28  /////

22

(e)(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that-

(A) the claim relies on-

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable fact finder would have found the applicant guilty of the underlying offense[.]

Under this statutory scheme, a district court presented with a request for an evidentiary hearing must first determine whether a factual basis exists in the record to support a petitioner's claims and, if not, whether an evidentiary hearing "might be appropriate." Baja v. Ducharme, 187 F.3d 1075, 1078 (9th Cir. 1999). See also Earp v. Ornoski, 431 F.3d 1158, 1166 (9th Cir. 2005); Insyxiengmay v. Morgan, 403 F.3d 657, 669-70 (9th Cir. 2005). A petitioner requesting an evidentiary hearing must also demonstrate that he has presented a "colorable claim for relief." Earp, 431 F.3d at 1167 (citing Insyxiengmay, 403 F.3d at 670, Stankewitz v. Woodford, 365 F.3d 706, 708 (9th Cir. 2004) and Phillips v. Woodford, 267 F.3d 966, 973 (9th Cir. 2001)). To show that a claim is "colorable," a petitioner is "required to allege specific facts which, if true, would entitle him to relief." Ortiz v. Stewart, 149 F.3d 923, 934 (9th Cir. 1998) (internal quotation marks and citation omitted).

The court concludes that no additional factual supplementation is necessary in this case and that an evidentiary hearing is not appropriate with respect to the claims raised in the instant petition. The facts alleged in support of these claims, even if established at a hearing, would not entitle petitioner to federal habeas relief. Therefore, petitioner's request for an evidentiary hearing should be denied.

**VI. Conclusion**

For the foregoing reasons, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

1        These findings and recommendations are submitted to the United States District Judge

2   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

3   after being served with these findings and recommendations, any party may file written

4   objections with the court and serve a copy on all parties.  Such a document should be captioned

5   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6   shall be served and filed within fourteen days after service of the objections.  Failure to file

7   objections within the specified time may waive the right to appeal the District Court's order.

8   Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

9   1991).  In his objections petitioner may address whether a certificate of appealability should issue

10   in the event he files an appeal of the judgment in this case.  See Rule 11, Federal Rules Governing

11   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

12   enters a final order adverse to the applicant).

13   Dated:  December 12, 2016

14

15

16                                          DEBORAH BARNES

17   DAD:8:                                 UNITED STATES MAGISTRATE JUDGE
     Shepard1812.hc:db1:prisoner-habeas

18

19

20

21

22

23

24

25

26

27

28